UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NATHANIEL BUCKLEY,                              13-CV-1205-RJA-MJR

              Plaintiff,                    REPORT AND RECOMMENDATION

  -v-

NIAGARA FRONTIER TRANSPORTATION
   AUTHORITY,
MANUFACTURERS AND TRADERS TRUST
   COMPANY,
ALLIEDBARTON SECURITY SERVICES, LLC,
RICHARD RUSSO, individually and in his
   official capacity as an NFTA police officer,
ADAM BRODSKY, individually and in his
   official capacity as an NFTA police officer,
GEORGE GAST, individually and in his
   official capacity as NFTA police chief,
ADAM REES, JACQUELINE M. JACKSON,
   and DAVID MONDRY,

              Defendants.
_____

This case has been referred to the undersigned for all pre-trial matters, including hearing and reporting on dispositive motions. Before the Court are summary judgment motions by all of the defendants (Dkt. Nos. 56, 58, and 67). For the reasons discussed below, I recommend that the motions be granted in their entirety.

## Background

Nathaniel Buckley brought this lawsuit arising from his arrest at a protest outside the Fountain Plaza branch of Manufacturers and Traders Trust Company ("M & T Bank") in downtown Buffalo at around 6:00 p.m. on Friday, April 8, 2011. Buckley was part of a group of approximately forty activists who were protesting "U.S. wars at home and abroad." Dkt. No. 67-10 at 3. They had begun their protest near the military

recruiters in Lafayette Square at approximately 4:30 p.m. and had moved on to City Hall, the FBI offices, and finally M & T Bank, which was chosen because it was believed to have received a government bailout and invested in military-related industries. Dkt. No. 67-11 at 10-13. At each location, the protesters would gather in a circle and give speeches. *Id.* at 15. Several carried signs, and one used a megaphone. *See* Dkt. Nos. 58-7 and 58-8 (Exhibits D and E to Mondry Decl.).

M & T Bank's Fountain Plaza complex includes the former Gold Dome Bank building, the newer M & T Center building, and a raised red brick plaza between the buildings. Dkt. No. 58-2 at 2-3. A ledge separates the red brick area from the sidewalk, which is approximately twenty feet wide. *Id.* at 3. It is undisputed that the red brick area and the ledge belong to the bank. *See* Dkt. No. 56-9 at 18-20; Dkt. No. 64 at ¶ 1. It is also undisputed that part of the sidewalk belongs to the bank. *See* Dkt. No. 56-9 at 18-20; Dkt. No. 64 at ¶ 1. The parties disagree over whether M & T Bank owns a six-foot block of the sidewalk or only a few inches beyond the ledge, but in any case, the public would have no reason to know that part of the sidewalk was private property. *See* Dkt. No. 56-9 at 19; Dkt. No. 64 at ¶ 1. An exact delineation of the property line is unnecessary for the purposes of this motion.

M & T Bank's surveillance camera footage from August 8, 2011 shows a group of approximately thirty-five protesters arriving at 5:48 p.m. and gathering in a circle on the sidewalk, with a few standing on the ledge. Dkt. No. 58-26 (Exhibit B to Mondry Decl.). Buckley testified that the protesters had not asked permission from M & T Bank to gather in that area because they believed it was public property. Dkt. No. 67-11 at 10.

A member of M & T Bank's security contractor, AlliedBarton Security Services, called M & T Bank's Physical Security Manager, David Mondry, to report protesters "standing on top of M & T property." Dkt. No. 58-27 (Exhibit C to Mondry Decl.), 04082011175259 at 0:28-0:37. Mondry told AlliedBarton employee Jacqueline Jackson to tell the protesters that they were on private property and subject to arrest for trespassing. *Id.*, 0482011175650 at 0:42-0:52. He also told her to point out the city property, where they would be free to conduct their protest. *Id.* Jackson testified that she told the protesters, "This is private property. You guys need to leave." Dkt. No. 67-14 at 18. Instead of leaving, however, they shouted, "Hell, no, we won't go!" and several who had been on the sidewalk moved onto the red brick area. *Id.* at 18-19. Jackson acknowledged at her deposition that she did not specify what she meant by "this"; she did not distinguish the red brick area or the ledge from the sidewalk. *Id.* at 19-20. In any case, Buckley did not hear what she said. Dkt. No. 62 at 3.

When Jackson saw that her request was being ignored, she told Mondry, who advised her to contact the Niagara Frontier Transportation Authority (NFTA) Police for backup support. Dkt. No. 58-27, 04082011175941 at 0:37-0:42. Jackson told the NFTA Police that "we have a large crowd and they are refusing to leave." Dkt. No. 56-7 at 19. NFTA police officer Richard Russo arrived on the scene. Dkt. No. 58-26 (Exhibit B to Mondry Decl.) at 18:10:18-20. Jackson's supervisor at AlliedBarton, Adam Rees, also arrived for support. Dkt. No. 56-8 at 4-6.

A close-up video shows Officer Russo standing on the ledge, with Buckley standing next to him. Dkt. No. 58-7 (Exhibit D to Cummings Decl.) at 0:01-0:20. A protester on the sidewalk said that they were entitled to hold their protest, and Officer

Russo replied, "No, you're not. It's private property. You're trespassing," and waved his arms forwards. *Id.* at 0:19-0:28. In response, a man yelled, "This is not private property!" *Id.* A different police officer said, "On the sidewalk, please, that's all we're asking for." Dkt. No. 58-8 (Exhibit E to Cummings Decl.) at 0:04-0:06. Buckley left the ledge and stepped onto the sidewalk within a few seconds of the second officer's request. *Id.* at 0:09-0:11.

When all the protesters were on the sidewalk, Officer Russo came down and stood in front of the ledge. Dkt. No. 58-7 (Exhibit D to Cummings Decl.) at 1:23-1:27. The protesters, including Buckley, moved close to him. *Id.* at 1:45-1:47. Officer Russo attempted to walk through the crowd to obtain identification from one of the most vocal protesters. Dkt. No. 67-16 at 16. Buckley repeatedly stood in front of him to block his path. Dkt. No. 58-7 (Exhibit D to Cummings Decl.) at 2:20-2:40. Officer Russo grabbed him, but Buckley escaped and ran south down Main Street. *Id.* at 2:43-3:02.

While Buckley was running from Officer Russo, another NFTA police officer, Adam Brodsky, ran in from the west, over the train tracks and south of the demonstration. Dkt. No. 58-26 (Exhibit B to Mondry Decl.) at 18:15:40-18:15:46. Officer Russo and Officer Brodsky grabbed Buckley and pulled him up the stairs onto the red brick plaza. Dkt. No. 58-7 (Exhibit D to Cummings Decl.) at 3:08-4:50. The crowd followed, shouting and taking videos of the ensuing struggle, during which Buckley was handcuffed. *Id.* Buckley struggled throughout, and Officer Brodsky sprayed him with pepper spray and used his baton. *Id.* at 3:28-30, 4:02-4:04. Buckley alleges that in the police car after his arrest, Officer Russo told him that "he wished that

the rally would have gotten out of control and that he would have been able to shoot me in the back of my head." Dkt. No. 69 at 5.

Buckley claims that his thumbs, shoulder, neck, and eyes were injured as a result of the arrest. Dkt. No. 67-11 at 25-26. All of his injuries resolved on their own. *Id.* The NFTA investigated the use of pepper spray on Buckley and found that it was justified. Dkt. No. 67-22.

Buckley was arrested and charged with trespass, riot in the second degree, inciting to riot, unlawful assembly, disorderly conduct, obstructing governmental administration in the second degree, and resisting arrest. Officer Russo signed the charges. Dkt. No. 67-20. He testified that he chose the charges that he believed were appropriate based on his reading of the criminal statute. Dkt. No. 67-16 at 26. The district attorney's office dismissed the charges of riot in the second degree, inciting to riot, unlawful assembly and disorderly conduct. Dkt. No. 56-19. Officer Russo testified that an assistant district attorney made the decision to dismiss those charges because she found that "they were either not appropriate or didn't quite meet the threshold for the statute." Dkt. No. 67-16 at 31.

Buckley's criminal trial on the remaining three charges ended in a mistrial because of juror misconduct. *Id.* at 3. On January 10, 2013, Judge Fiorella dismissed the charges in the interests of justice under section 170.40 of the Criminal Procedure Law. *Id.* at 11. Judge Fiorella found that the State had failed to establish beyond a reasonable doubt that Fountain Plaza was private property and that the public had any knowledge that it was private property. *Id.* at 8-9. He ruled that Buckley could not be found guilty of trespass because he complied with the officers' instruction to leave the

bank's property. *Id.* at 9-10. He found that the charges of resisting arrest and obstructing governmental administration "flowed from the illegal actions of the NFTA Police" in seeking to arrest him after he had moved onto the public sidewalk. *Id.* at 11.

After Judge Fiorella dismissed the criminal charges, Buckley filed this lawsuit for alleged constitutional violations and malicious prosecution. Six of the seven causes of action apply only to Officer Russo and Officer Brodsky. The last, for common law malicious prosecution, is asserted against all the defendants.

## Analysis

### *Summary Judgment Standard*

A motion for summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that there are no genuine disputes as to any material fact. *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003). The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988). Summary judgment will be granted only where a reasonable jury, viewing the evidence "in the light most favorable to the nonmoving party," would be compelled to decide in favor of the movant. *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007).

### *Qualified Immunity Defense*

Officer Russo and Officer Brodsky have argued that they are entitled to qualified immunity. "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. §1983, unless their actions

violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Summary judgment should be granted in favor of the police officers "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances." *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995). In other words, officers have immunity for decisions that were "reasonable even if mistaken." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

1. *§1983 Malicious Prosecution Claim against Officer Brodsky and Officer Russo*

Malicious prosecution under section 1983 requires a "post-arraignment seizure" in violation of the Fourth Amendment prohibition on unreasonable seizures and all the elements of a malicious prosecution claim under state law. *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013). In New York, the elements of malicious prosecution are (1) initiation of a criminal proceeding; (2) favorable termination of the criminal proceeding; (3) lack of probable cause for the prosecution; and (4) actual malice. *Id.* at 111-12.

The requirement of a post-arraignment seizure is met when a person was "obligated to appear in court in connection with criminal charges." *Id.* at 112 (internal citations omitted). *See also Rohman v. New York City Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000) (holding that the plaintiff suffered a sufficient Fourth Amendment post-arraignment liberty restraint when "he was required, as a condition of his post-arraignment release, to return to court on at least five occasions before the charges against him were ultimately dropped." ). In this case, Buckley has suffered a post-arraignment seizure because he was required to appear in court several times in connection with his criminal charges. *See* Dkt. No. 69 at ¶ 31.

The initiation or commencement element of malicious prosecution may be met if a police officer brought formal charges against the plaintiff or played an active role in the prosecution. *Llerando-Phipps v. City of New York*, 390 F.Supp.2d 372, 382 (S.D.N.Y. 2005); *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010). In this case, Officer Brodsky cannot be said to have initiated the criminal proceedings. He had no role in preparing the criminal charges and did not sign any of the central booking documents. *See* Dkt. No. 67-17 at 26; Dkt. No. 67-20. Officer Russo, on the other hand, initiated the complaint by preparing the charging documents, which he was aware could lead to Buckley being fined or imprisoned. Dkt. No. 67-16 at 29.

The favorable termination element is met in this case. Under New York law, termination is favorable if it was "not inconsistent" with innocence. *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001). Where a judge dismissed the criminal charges in the interests of justice and made clear in his or her decision that the accused was likely innocent of the alleged crimes, the malicious prosecution claim can go forward. *See id.* at 396. Judge Fiorella's decision was consistent with Buckley's innocence. He specifically found that Buckley was not guilty of trespass and that the charges of obstructing governmental administration and resisting arrest failed because they arose out of the officers' attempts to arrest Buckley for trespass. Dkt. No. 56-19 at 11. The dismissal before trial of the riot, inciting to riot, unlawful assembly, and disorderly conduct charges was also a favorable termination, as it was consistent with Buckley's innocence. *See Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F.Supp.3d 267, 288-289 (E.D.N.Y. 2014) ("[A]s long as the voluntary dismissal did not stem from a settlement or

compromise between the parties, it was sufficient to state a malicious prosecution claim.").

Probable cause is the most heavily contested element in this case. "Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *Colon v. City of New York*, 60 N.Y.2d 78, 82 (N.Y. 1983). Each of the crimes that the plaintiff was charged with must have been supported by probable cause at the time he was charged. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

For the crime of trespass, a person must "knowingly enter[] or remain[] unlawfully in or upon premises." N.Y. Penal Law §140.05. Under Buckley's version of events, the protesters did not "knowingly" remain on the bank's property because they believed they were on public property. *See* Dkt. No. 68 at 3. Probable cause does not require that the officer be correct, however, only that he act reasonably under the circumstances. *See Colon*, 60 N.Y.2d at 82. Furthermore, Officer Russo is protected by qualified immunity if *any* reasonable police officer could find that the charge was supported by probable cause. *See Lennon*, 66 F.3d at 421.

In this case, a reasonable officer could find that Officer Russo had probable cause to charge Buckley with trespass. The NFTA Police had been called to the scene because a large group of protesters was "refusing to leave" private property. Dkt. No. 56-7 at 27. The surveillance video shows Officer Russo standing among the protesters for several minutes before they cleared the ledge. Dkt. No. 58-26 (Exhibit B to Mondry Decl.) at 18:10:48–18:13:57. He told them that they were on private property and asked them to move, but they did not. Dkt. No. 58-7 (Exhibit D to Cumming Decl.) at 0:19-

0:28. Buckley was standing next to him on the ledge at the time. *Id.* A reasonable officer could find that Buckley's refusal to move off the ledge after hearing Officer Russo's request would justify a trespass charge.

The charge of obstruction of governmental administration was supported by probable cause. As shown on video, Buckley deliberately stepped in front of Officer Russo to block his path. Dkt. No. 58-7 (Exhibit D to Cummings Decl.) at 2:20-2:40. When Officer Russo attempted to seize him, Buckley ran away. *Id.* at 2:43. The video evidence also shows that the charge of resisting arrest was supported by probable cause. Buckley struggled with Officers Russo and Brodsky while they attempted to handcuff him. *Id.* at 3:08-4:50.

Although the District Attorney's Office dropped the charges of riot in the second degree, inciting to riot, unlawful assembly, and disorderly conduct, a reasonable police officer could find that the charges were supported by probable cause. These charges are all aimed at "tumultuous and violent conduct." *See* N.Y. Penal Law §§195.05, 240.05, 240.08, 240.10. Officer Russo believed that the charges were appropriate, based on his reading of the criminal statute, and he described the relevant facts honestly in the charging documents. *See* Dkt. No. 67-16 at 26; Dkt. No. 67-20 at 5-7. A group of approximately thirty or forty protesters had crowded around him, shouting and refusing to follow directions. *See* Dkt. No. 58-7 (Exhibit D to Cummings Decl.). Buckley had encouraged them to louder and more threatening conduct by standing in Officer Russo's way and fighting with the police when they put him under arrest. *See id.* at 3:08-4:50. The fact that the district attorney's office had a different legal opinion about whether the charges applied does not mean that Officer Russo acted unreasonably in

preparing the charges. "Police officers are not expected to be lawyers or prosecutors," and should not be given "the unenviable choice between failing to enforce the law and risking personal liability for what they reasonably, but mistakenly, think is the law". *Amore v. Novarro*, 624 F.3d 522, 531, 534 (2d Cir. 2010) (internal citation omitted).

Since a reasonable police officer could find that all of the charges were supported by probable cause, Officer Russo is entitled to qualified immunity and the section 1983 malicious prosecution claim should be dismissed as against him. As discussed above, the claim must also be dismissed as against Officer Brodsky because he did not initiate the prosecution.

2.  *§1983 False Arrest and Imprisonment Claims against Officer Russo and Officer Brodsky*

A Section 1983 claim for false arrest derives from an individual's Fourth Amendment right to remain free from unreasonable seizures, including the right to be free from arrest absent probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause exists when the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *See Weyant,* 101 F.3d at 852. Unlike probable cause in the case of malicious prosecution, for false arrest "we focus on the validity of the arrest, and not on the validity of each charge." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

The officers' testimony about their motives for arresting the plaintiff is irrelevant for determining probable cause. When determining whether probable cause existed to support an arrest, courts are to "consider those facts available to the officer at the time

of the arrest and immediately before it" and decide whether those facts could reasonably lead to a belief that the person had committed a crime. *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006). An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Officer Russo is entitled to qualified immunity "[i]f officers of reasonable competence could disagree as to whether probable cause existed." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (internal citations omitted). Here, officers could reasonably disagree about whether there was probable cause to arrest Buckley for trespass. Jackson had told the NFTA Police that a large crowd of protesters was "refusing to leave" bank property. Dkt. No. 56-7 at 27. Buckley was one of the protesters standing on bank property when Officer Russo arrived, and it was reasonable to assume that he had deliberately chosen to stay on private property. *See* Dkt. No. 58-7 (Exhibit D to Cummings Decl.). Officer Russo himself also told the protesters that they were on private property and asked them to move. *Id.* at 0:19-0:28. Buckley was standing right next to him but did not move. *Id.* A reasonable officer could find that Officer Russo had ample reason to believe that Buckley was knowingly and unlawfully standing on private property.

Officer Brodsky had far fewer facts available to him at the time of the arrest. When he arrived at the scene, he saw Officer Russo pursuing Buckley but did not know the reason. Dkt. No. 67-17 at 7, 9. "Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful." *Loria v. Gorman*, 306 F.3d 1271, 1287 (2d Cir. 2002). Officer Brodsky, seeing a fellow

officer chasing a suspect, had probable cause to assist in the arrest, and the cause of action for false arrest should be dismissed against him as well.

    3.    *§1983 Failure to Intervene Claim against Officer Russo and Officer Brodsky*

Plaintiff alleges that Officers Russo and Brodsky failed to prevent each other from engaging in illegal acts. "An officer who fails to intercede is liable for the preventable harm caused the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by law enforcement." *Anderson v. Branen*, 17 F.3d 55, 557 (2d Cir. 1997). The officer is liable only if he had "a realistic opportunity to intervene." *Id.* at 558.

The failure to intervene claim against Officer Brodsky should be dismissed, as he did not have reason to know that the plaintiff might have been unjustifiably arrested or that his fellow officer may have committed a constitutional violation. He did not observe the events leading up to the arrest. *See* Dkt. No. 67-17 at 7, 9.

The claim against Officer Russo should also be dismissed. As discussed above, a reasonable officer could find that the arrest was justified. As for the excessive force allegations, Officer Russo had no realistic opportunity to control Officer Brodsky's use of force, as Officer Brodsky acted quickly while both officers were trying to restrain Buckley. *See* Dkt. No. 58-7 (Exhibit D to Cummings Decl.) at 3:50-4:10. In addition, as discussed below, the force used against Buckley was not excessive under the circumstances.

4-6. *§1983 Assault, Battery, and Excessive Force Claims against Officer Russo and Officer Brodsky*

To succeed on an excessive force claim, the plaintiff must demonstrate that the force used by a police officer was "objectively unreasonable" under Fourth Amendment standards and in light of the facts and circumstances surrounding the officer at the time of the incident. *Finnegan v. Fountain*, 915 F.2d 817 (2d Cir. 1990). The focus is on the amount of force, not on the extent of injury. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

The reasonableness of the force used is "judged from the perspective of a reasonable officer on the scene" and takes into account factors such as "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 395 (1989). It "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

In a recent case cited by the plaintiff, the Second Circuit denied summary judgment on an excessive force claim where a young woman who was resisting an arrest for disorderly conduct was taken to the ground and sprayed in the face with pepper spray. *Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015). The court noted that the amount of force must be weighed against the dangerousness of the plaintiff and the severity of the crime. *Id.* For a harmless suspect arrested for a minor offense, it may have been unreasonable to pepper spray her face and take her to the

ground, since other methods could have been used to restrain her. *Id.* The court found that "[t]he continuum along which the excessiveness of force in making an arrest is assessed is not marked by visible signposts" and is best left to the jury. *Id.* at 103.

This case is distinguishable from *Brown*, however, and Officers Russo and Brodsky are entitled to qualified immunity on the excessive force claim because it was "objectively reasonable" to believe that their conduct during the arrest did not violate Buckley's right not to be subjected to excessive force. *See Calamia v. New York*, 879 F.2d 1025, 1036 (2d Cir. 1989). Notably, Officer Brodsky, who used the pepper spray and baton on Buckley, could not have weighed the severity of Buckley's crime in determining how much force to use because he did not know why Buckley was being arrested. Dkt. No. 67-17 at 7. He knew only that Buckley was fleeing from Officer Russo and was resisting arrest after he was caught. *Id.* at 7-16.

Even taking into account the low-level crimes that Buckley was suspected of, the amount of force used was objectively reasonable. A police officer's right to carry out an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it". *Graham*, 490 U.S. at 396. *See, e.g., Gutierrez v. City of New York*, 13-cv-3502, 2015 U.S. Dist. LEXIS 126011 (S.D.N.Y. Sept. 21, 2015) (finding that it was permissible to break a car window and spray pepper spray into the vehicle when the suspect refused to open the window or get out of the car). With a suspect like Buckley, who was struggling with the officers and had just made an attempt to flee, the use of baton and pepper spray was justified.

The analysis for the assault and battery claims is the same as for the excessive force claims because "where there has been a lawful arrest, intentional contact with the

arrested person does not constitute assault and battery, provided such force is reasonable." *Cunningham v. United States*, 472 F. Supp. 2d 366, 381 (E.D.N.Y. 2007). As the force used in arresting Buckley was objectively reasonable under the circumstances, the assault and battery claims should be dismissed.

### 7. State Law Malicious Prosecution Claims Against All Defendants

Since all the federal claims should be dismissed, the Court should decline to hear the remaining state law claim for malicious prosecution. *See* 28 U.S.C. §1367 ("The district courts may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction"). When no federal law claims remain, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.,* 712 F.3d 705, 727 (2d Cir. 2013).

Alternatively, the state malicious prosecution claims can be dismissed on the merits as against each defendant. The summary judgment motion by George Gast, the NFTA police chief, was unopposed, and there is no evidence in the record that Gast was involved in prosecuting Buckley. Dkt. No. 68 at 1. As discussed above, the claim against Officer Brodsky fails because he was not involved in bringing charges against Buckley. The claim against Officer Russo should be dismissed because he had probable cause to bring charges against Buckley. Since none of the NFTA employees are liable, the case should also be dismissed as against the NFTA.

Buckley's malicious prosecution claim against AlliedBarton Security Services, Jacqueline Jackson, Adam Rees, David Mondry, and M & T Bank fails because none of

these defendants commenced the criminal proceeding against Buckley. "[A] civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution." *Du Chateau v. Metro-North Commuter R. Co.*, 688 N.Y.S.2d 12, 15 (N.Y. App. Div. 1999) (internal citations omitted). "The defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition." *Mesiti v. Wegman*, 763 N.Y.S.2d 67, 69 (N.Y. App. Div. 2003).

The record shows no evidence of "active, officious and undue zeal" on the part of Jackson, Rees or Mondry in prosecuting Buckley. Jackson did not ask anyone to arrest Buckley. Dkt. No. 56-7 at 38. She gave a statement to the NFTA Police only because she was asked to. *Id.* at 39-41. Rees, too, did no more than he was asked. At Officer Russo's request, he signed a complaint. Dkt. No. 56-8 at 39, 58. He also participated in a photo array when asked to do so. *Id.* at 46-47. There is no sign in the record that Rees in any way encouraged the district attorney to prosecute Buckley. Mondry had even less involvement. He merely provided information to the NFTA and the district attorney's office when asked to do so. *See* Dkt. No. 58-24 at 9-10. He never asked that Buckley be charged or prosecuted. *Id.*

As there is no valid claim against Rees, Jackson, or Mondry, the complaint must also be dismissed as against their employers, AlliedBarton Security Services and M&T Bank.

## **Conclusion**

For the foregoing reasons, it is recommended that the summary judgment motions of defendants AlliedBarton Security Services, LLC, Adam Rees and Jacqueline M. Jackson (Dkt. No. 56), Manufacturers & Traders Trust Company and David Mondry (Dkt. No. 58), and Adam Brodsky, George Gast, Niagara Frontier Transportation Authority, and Richard Russo (Dkt. No. 67) be granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Arcara.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and

recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

    **SO ORDERED.**

Dated:    July 21, 2016
             Buffalo, New York

                                    */s/ Michael J. Roemer*
                                    MICHAEL J. ROEMER
                                    United States Magistrate Judge